Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1738 | **DATE** | 7/26/2004 |
| **CASE TITLE** | Irwin Industrial Tool Company vs. Orosz, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the disputed terms of the '081 patent are construed, consistent with this opinion, as follows: (1) a pen-light laser is a laser that is about as small and slender as a fountain pen, and the pen-light laser may be a part of a larger, portable laser unit; (2) leveling means directly asscoiated therewth only requires tha the leveling means have a fixed relationship with the pen-light laser; (3) a transparent bar is a transparent and straight, cylindrical, rod-like piece that is considerably longer than it is wide; and (4) to convert said beam to a line of light on surfaces to which it is projected only requires the device project the beam as a line on a surface, regardless of whether the surface is a remote surface. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 26 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 85 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRWIN INDUSTRIAL TOOL COMPANY, )
formerly known as American Tool Company, )
)
Plaintiff, )
)
v. ) No: 03 C 1738
)
STEVEN J. OROSZ, JR., and ) Judge John W. Darrah
CHARLES F. SCHROEDER, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Irwin Industrial Tool Company ("Irwin"), filed suit against Defendants, Stephen J. Orosz, Jr. and Charles F. Schroeder (collectively "Orosz"), seeking a declaratory judgment that its Strait-Line Laser Level product did not infringe United States Patent Number 5,836,081 ("the '081 patent"). Presently before the Court is the claim construction of the '081 patent.

## LEGAL STANDARD

"In judicial 'claim construction' the court must achieve the same understanding of the patent . . . as would a person experienced in the technology of the invention. Such a person would not rely solely on a dictionary of general linguistic usage, but would understand the claims in light of the specification and the prior art, guided by the prosecution history and experience in the technological field." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999).



To construe a patent claim, a court analyzes the intrinsic evidence of the record, which includes the claims and written description of the patent itself, and the prosecution history if it is in evidence. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003) (*Altiris*); *Biovail Corp. v. Andrx Pharmaceuticals, Inc.*, 239 F.3d 1297, 1300 (Fed. Cir. 2001) (*Biovail*). When analyzing the intrinsic evidence, the court starts with the language of the claims and engages in a "heavy presumption" that claim terms carry their ordinary meanings as viewed by one of ordinary skill in the art. *Altiris*, 318 F.3d at 1369. The ordinary and accustomed meaning of a disputed claim term is presumed to be the correct one unless either a different meaning is clearly and deliberately set forth in the intrinsic evidence or the ordinary and accustomed meaning of the disputed term would deprive the claim of clarity – then extrinsic evidence may be used to ascertain the proper meaning of the term. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed. Cir. 1999).

The specification is highly relevant to the claim construction analysis. The specification is the single best guide to the meaning of a disputed term. *See Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (*Teleflex*). However, while the claims must be read in view of the specification, limitations from the specification are not read into the claim. *Teleflex*, 299 F.3d at 1326. Claim language must also be read consistently with the totality of the patent's applicable prosecution history. *Biovail*, 239 F.3d at 1300.

Reliance on extrinsic evidence is improper if the intrinsic evidence unambiguously describes the scope of the patented invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (*Vitronics*). However, the court is not barred from ever considering extrinsic evidence. *See Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1346

(Fed. Cir. 2003) (*DeKalb*); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (*Pitney Bowes*). Extrinsic evidence may be consulted to ensure that the court's claim construction is not inconsistent with the expressed and widely held understanding to one in the field. *See DeKalb*, 315 F.3d at 1346; *Pitney Bowes*, 182 F.3d at 1308.

Dictionary definitions may also be consulted in establishing a claim term's ordinary meaning. *Altiris*, 318 F.3d at 1369. Dictionaries can help define a term but should not be used exclusively. "[B]ecause words often have multiple dictionary definitions, some having no relation to the claimed invention, the intrinsic record must always be consulted to identify which of the different possible dictionary meanings of the claim terms in issue is most consistent with the use of the words by the inventor." *Intellectual Prop. Dev. v. UA-Columbia Cablevision*, 336 F.3d 1308, 1315 (Fed. Cir. 2003) (citations omitted).

## BACKGROUND

The '081 patent relates to a light beam level device and method of leveling transducer devices. Claim One of the '081 patent states:

> A portable laser unit for use in aligning spaced points comprising,
>
> *a pen-light laser* and *leveling means directly associated therewith* for providing a reference for horizontal orientation of the beam projected therefrom,
>
> *a transparent bar* positioned for transmission of the beam of said laser therethrough *to convert said beam to a line of light on surfaces to which it is projected.*

3

## ANALYSIS

The parties dispute the meaning of: (1) a pen-light laser, (2) leveling means directly associated therewith, (3) transparent bar, and (4) to convert said beam to a line of light on surfaces to which it is projected.

Both parties agree that a pen-light laser is "about as small and slender as a fountain pen." Irwin, though, contends that this limitation applies to the whole device, while Orosz argues that the limitation only requires that a pen-light laser be included in the device.

According to Irwin, the specification consistently uses the terms "pen-light sized laser" and "portable laser unit" interchangeably. Moreover, some figures included in the specification point to the whole device as being the pen-light laser. Thus, to Irwin, the consistent use of the term pen-light laser in this manner impliedly defines the term as the whole device. *See Bell Atlantic Network Servs., Inc. v. Covad Communication Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001) ("[T]he patentees defined the term . . . by implication, through the term's consistent use throughout the . . . patent specification.").

However, the specification does not reveal that Orosz consistently used the term pen-light laser in this fashion to implicitly define the term as applying to the whole device. In column 1, lines 33-35 of the patent, Orosz refers to the pen-light sized laser as an exemplification of the compact, pocket-sized light beam device. The specification further explains that other components may be affixed to the device and that the portable laser unit may include more components than just a pen-sized laser. "[A] flat surface member . . . might be provided at the bottom of the pen-like housing incorporating the beam circuitry and power source." (Column 4,

4

lines 54-56). Furthermore, the specification and figure 5 also explain that in another embodiment of the invention, a second pen-light laser can be used in the device; the specification specifically states that "a unit assembly of two portable pen-light lasers . . . can be aligned side-by-side in an assembly." (Column 5, lines 32-34). If a second pen-light laser or other components can be added to the portable laser unit, then the pen-light laser cannot, in and of itself, constitute the whole device.

Irwin further argues that the claimed pen-light laser itself must be fully functional by including a power source. Otherwise, the device would be rendered inoperable; and, therefore, the patent would not contain an enabling disclosure. According to Irwin, the specification reference stating the pen-light housing incorporates the beam circuitry and electric power source demonstrates that the device is an independently functioning laser that is pen-light sized, while Orosz's construction leaves the device inoperable because the claim would not include a power source.

Adopting Irwin's construction, however, would improperly add a claim limitation from the specification. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204-05 (Fed Cir. 2002). Moreover, the specification, and not just the claim, may enable those skilled in the art to make the claimed invention. *See, e.g., John Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359 (Fed. Cir. 1998). Whether the specification makes an enabling disclosure is not proper to resolve in a claim construction proceeding.

The prosecution history of the '081 patent also fails to expressly state that the pen-light laser is the whole device. A patentee may not state that the claims of a patent do not cover a

particular device during prosecution and then change that position during an infringement suit. *Spring Window Fashions LP v. Novo Industries, L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

Irwin argues that Orosz distinguished the patented invention over the prior art by including a leveling means with a pen-light-sized laser, instead of using a multiple combination of elements in a case housing a level and a laser disclosed in the prior art. However, Orosz distinguished the invention over the prior art by being the first to use a leveling means with a pen-light-sized laser that, significantly, used a line-forming lens instead of a diffuser. (Pl.'s App. at A0064-A0065).

Lastly, the patent claims demonstrate that the pen-light laser is not the whole device. Initially, the unit is described as a portable laser unit which is comprised of a pen-light laser. Other claims of the '081 patent that are dependent on claim 1 also explain that the portable laser unit may incorporate a second laser. For example, claim 4 states "[a] portable laser unit as set forth in claim 1 in which a second laser is incorporated in said unit . . . ."

Therefore, Orosz did not consistently use the term pen-light laser in the specification and prosecution history to implicitly define it as being the whole device. Instead, a pen-light laser is defined as a laser that is about as small and slender as a fountain pen; and the pen-light laser, consistent with the claim, may be part of a larger, portable laser unit.

Next, the parties differ about the proper construction of the term "leveling means directly associated therewith." According to Irwin, this term requires that the leveling means be fastened directly to the pen-light laser. Orosz contends that this term only requires the leveling means to have a fixed relationship with the pen-light laser.

Irwin once again argues that the specification repeatedly stresses, in words and figures, that the leveling means is mounted directly on the laser. However, the specification also states, in multiple places, that the leveling means may be mounted directly on the laser housing. Therefore, the specification does not consistently require that the leveling means be mounted directly on the laser such that it implicitly defines the laser in this manner.

Irwin also relies on the prosecution history to limit this term to directly touching the pen-light laser. According to Irwin, Orosz added the term "directly" to overcome a prior art objection, and Orosz is thus bound by this addition. However, that prior art objection Orosz rebutted contained a laser that was associated with a level, where the level could be moved independently of the laser. Here, the level of the patented device is required to be fixed in its relationship with the laser; thus, it cannot move independently of the pen-light laser and is "directly associated" with the pen-light laser. Accordingly, the specification and the prosecution history fail to limit the claim construction of the term leveling means directly associated therewith as Irwin proposes.

The ordinary meaning of the term is best derived from the context of the claim. The claim requires that the level, which is directly associated with the pen-light laser, provide a reference for horizontal orientation of the beam projected from the pen-light laser. The horizontal orientation of the pen-light laser beam is thus dependent on whether the bubble level indicates that the beam is level. For the beam to be level, the leveling means need not physically touch the pen-light laser but, rather, only needs to be fixed such that the beam correctly represents what is portrayed by the level. Therefore, for the level to be in direct association with the beam, the level only needs to be in a fixed relationship to the pen-light laser.

7

The parties also dispute the proper construction of the term "transparent bar." Irwin contends this term means a transparent and straight, cylindrical, rod-like piece that is considerably longer than it is wide. Orosz argues that this term means a transparent piece of material that has a curved surface.

According to Irwin, the terms bar, rod, and tube are used synonymously throughout the patent specification and that no other term or shape is used to describe the transparent bar. Irwin also asserts that the figures included with the patent specification depict a cylindrical bar.

Orosz claims that the prosecution history of the '081 patent demonstrates that both the Patent and Trademark Office and Orosz understood a transparent bar to include something less than a full cylinder. In an office action dated December 29, 1997, the patent examiner stated, "Jehn teaches how a transparent bar may be used for the purpose of projecting light onto an object." (Pl.'s App. at A0058). Figures 1, 5, 6, 7, and 8 of the Jehn Patent, Patent No. 5,446,635, disclose a half-cylinder used for projecting light onto an object.

However, the prosecution history may not be viewed as evidence of the subjective intent of the patent applicant or the patent examiner. "Representations during prosecution cannot enlarge the content of the specification"; and it is proper, instead, to rely on the specification itself for guidance in analyzing the claims. *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139-40 (Fed. Cir. 2003). Thus, a transparent bar is not required to be construed as something other than a cylinder simply because the prosecution history discloses that a transparent bar could be a half-cylinder.

Here, Orosz has failed to identify anything in the specification that explains a transparent bar is a piece of material with a curved surface. Instead, as Irwin argues, the specification interchangeably uses the words rod and tube with the term bar; and no other descriptive word is used. Moreover, even without referring to the specification, the ordinary meaning of the term bar is not best understood as any piece of material with a curved surface but, rather, as something that is cylindrical in shape. Accordingly, a transparent bar is construed to be a transparent and straight, cylindrical, rod-like piece that is considerably longer than it is wide.

Lastly, the parties dispute the proper construction of the term to convert said beam to a line of light on surfaces to which it is projected. According to Irwin, this term means that the laser must form a line on a remote surface to which the beam is projected. Orosz claims that the term only requires a line be projected on a surface.

Irwin first claims that the dictionary definition for the terms "to which" is suggestive of movement toward a place, person, or thing. The term "to," though, is a prepositional phrase that has multiple interpretations. Moreover, the dictionary definition proposed by Irwin is still broad enough to encompass projection on any surface – even a surface the device sits upon – and not just a remote surface.

Irwin next argues that the specification repeatedly states that the laser aligns spaced points in space which are projected to a surface. Irwin further contends that the figures with the patent specification show the beam projected between two points on a remote surface. However, lines 47-55 of column 2 in the patent specification state that a line may be projected on a reflective surface, not a remote surface. Furthermore, this specification reference also indicates

9

that a line could be projected at any desired angle. Thus, the patent specification fails to consistently limit this disputed term to only permitting a line projected on a remote surface.

Irwin asserts that the prosecution history supports its construction. According to Irwin, the patented device was distinguished over the prior art because the patented device projects a line through space. In contrast, the prior art formed a line that would act as a guide for a cutting tool on the surface the device embodied in the prior art was mounted. However, the '081 patent was not distinguished over the relevant prior art (Jehn) on the basis of what surface the line was projected. Instead, the '081 patent distinguished the prior art by combining a portable laser unit, which uses a line-forming lens instead of a diffuser, with a level. Furthermore, the prosecution history also confirms "that a line of light can be projected on a surface from which it is reflected at a desired angle relative to horizontal;" this description could also include zero degrees, which would project the line of light onto the surface the device was mounted. (Pl.'s App. at A0067).

Lastly, Irwin contends that the intended use of the patent, for medical applications, supports its construction. Although it is appropriate to consider the intended use of the invention in construing the claims, the problem the inventor was attempting to solve is only "a relevant consideration," not a determinative one. *CVI/Beta Ventures v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997). Here, while Orosz intended the invention to be used primarily for medical purposes, the specification reveals that the invention could be used for construction and engineering purposes as well.

In light of the above analysis, the disputed term does not require that the line be projected onto a remote surface, as stressed by Irwin. Rather, the ordinary meaning of the term only

requires that the device project the beam as a line on a surface, regardless of whether the surface is a remote surface.

## CONCLUSION

For the foregoing reasons, the disputed terms of the '081 patent are construed, consistent with this opinion, as follows: (1) a pen-light laser is a laser that is about as small and slender as a fountain pen, and the pen-light laser may be part of a larger, portable laser unit; (2) leveling means directly associated therewith only requires that the leveling means have a fixed relationship with the pen-light laser; (3) a transparent bar is a transparent and straight, cylindrical, rod-like piece that is considerably longer than it is wide; and (4) to convert said beam to a line of light on surfaces to which it is projected only requires that the device project the beam as a line on a surface, regardless of whether the surface is a remote surface.

Dated: 7-26-04

JOHN W. DARRAH
United States District Judge

11